## PRICE *v.* MORRIS.

### Opinion delivered February 7, 1916.

1. MALICIOUS PROSECUTION—MALICE AND PROBABLE CAUSE.—Want of probable cause, and malice combined, are essential, in order to maintain a suit for malicious prosecution.

2. MALICIOUS PROSECUTION—INFERENCE OF MALICE.—Malice, generally, may be inferred from the evidence of want of probable cause.

3. MALICIOUS PROSECUTION—PROBABLE CAUSE.—Absence of probable cause is absolutely essential to sustain an action for malicious prosecution; no matter how much or what kind of malice may actuate the prosecutor, if he has probable cause to believe the defendant guilty, he is justified in taking the matter before the court.

4. MALICIOUS PROSECUTION—PROBABLE CAUSE—ADVICE OF COUNSEL.—Proof that defendant acted upon the advice of counsel learned in the law, or upon the advice of the public prosecutor, given after a full and fair statement of all the known facts, will be a complete defense to an action for malicious prosecution, because it is conclusive evidence of the existence of probable cause.

5. MALICIOUS PROSECUTION—PROBABLE CAUSE—ADVICE OF DISTRICT ATTORNEY.—Where defendants laid before the district attorney all the

material facts in their possession, and a prosecution of plaintiff for
a violation of the postal laws, was instituted upon the district at-
torney's advice given in good faith, this is conclusive evidence of
the existence of probable cause and is a complete defense to an
action for malicious prosecution.

Appeal from Sebastian Circuit Court, Fort Smith
District; *Paul Little,* Judge; reversed.

### STATEMENT BY THE COURT.

This is an action for malicious prosecution brought
by Emmett Morris against M. G. Price and F. B. Bum-
gardner. The action is based upon the following facts:
The defendant F. B. Bumgardner became postmaster of
the city of Fort Smith, Arkansas, on March 12, 1910.
His commission expired on March 12, 1914, but he held
over until July 15, 1914. When he became postmaster the
plaintiff was a clerk in the office but after four months
Bumgardner made him foreman of the work room. In
1912 plaintiff was appointed superintendent of mails and
occupied that position at the time the matters involved
in this suit occured. Bumgardner claimed that plaintiff
was inattentive to his duties and in the latter part of 1913
made complaint to the department with the view of having
him removed. The defendant Price, who was post office
inspector, was sent to Fort Smith to investigate the
charges made against Morris. In making the investi-
gation Price discovered that Morris procured two of his
subordinates to sign promissory notes for him, and he
procured the affidavits of these men to that fact. One
of them, R. C. Medlin, in his affidavit states that he was
clerk in the post office under Morris and that some time
in September, 1912, he signed a note with Morris to the
Day and Night Bank for $300 and later signed a re-
newal for $200, that Morris offered him no inducement
to sign the notes except to say that he had often favored
affiant; that he did not propose to give him any favors
as far as his promotion was concerned; that he made
no promise to favor affiant in an official way and that
affiant did not think Morris was in a position to promote
him and that he did not think he could very well afford

not to sign the note; that he and Morris had been close friends for about twelve years.

John P. Kennedy made an affidavit in which he stated that he was a clerk in the postoffice at Fort Smith and that in December, 1912, Morris came to him to get him to sign a note for $300 and said that Mr. Medlin would sign it with him; that Morris had signed a note for him for $30, and that he signed the note for Morris because Morris asked him to and because they were friends; that he would have signed it whether or not they had been associated in the office, and that Morris did not offer him any inducements to get him to sign the note.

Price told Bumgardner that the facts stated in these affidavits constituted a violation of section 168 of the postal laws and regulations of the revised statutes of the United States. Bumgardner knew that Kennedy and Medlin had signed the notes for Morris in 1913 but had no idea that such acts constituted a violation of the postal laws. Price showed these affidavits to J. V. Bourland, United States district attorney, and also showed him the clause of the postal laws above referred to. Bourland, after reading over the affidavits and the postal regulations above referred to, gave it as his opinion that Morris was guilty. He then filed an information before the United States Commissioner at Fort Smith charging Morris with a violation of the postal laws. At the examination the Commissioner found that Morris was not guilty of any offense against the postal laws under the facts stated in the two affidavits above referred to.

The district attorney testified that the defendants showed him the affidavits of Kennedy and Medlin and that he acted upon the information contained therein in instituting the prosecution against Morris. He testified that he was still of the opinion that the facts warranted the prosecution and that Morris was guilty, under the facts stated in the affidavits. He further stated that the attorney general of the United States had directed him to defend Price in this action upon the request of the post office department.

Price and Bumgardner also stated that their information was obtained from the affidavits of Kennedy and Medlin; that they showed these affidavits to the district attorney and told him that was all the information they had on the subject. On the part of the plaintiff it was shown that when Bumgardner first became postmaster a warm friendship existed between him and Morris; that their friendship gradually waned until Bumgardner had a positive dislike, if not direct hatred for Morris; that while the district attorney was writing out the information to procure the arrest of Morris, Bumgardner was present and his countenance expressed great satisfaction. In short, there was testimony from which the jury might have inferred that the defendants were actuated by ill will and a spirit of revenge towards plaintiff in procuring plaintiff's prosecution, as above stated, but the conclusion we have reached renders it unnecessary to state this evidence in detail.

The jury returned a verdict for the plaintiff and the defendant has appealed.

*J. V. Bourland,* U. S. Dist. Atty., and *H. C. Mechem,* for appellants.

1.   The court erred in admitting the testimony of Rowe that Bumgardner exhibited strong dislike for Morris. The question was whether Bumgardner had malice against Morris when the prosecution complained of took place, not at some other time.

2.   The court erred in denying Bumgardner's request for a direct verdict. (1) There was no evidence that he had anything to do with the prosecution or conspired with Price to cause it. The evidence must be clear, full and satisfactory to establish a fraudulent conspiracy in a civil suit for damages. 1 Pears, (Penn.) 510; 70 Atl. 546; 65 So. 793; 44 Fed. 896; 23 N. W. 325; 94 *Id.* 4; 26 N. C. (Iredell) 61; 75 Me. 184; 82 Ark. 259. (2)   Because Price and Bumgardner were protected by the advice of the district attorney, who was of the opinion that § 168 Postal Laws had been violated and filed the

complaint himself. 82 Ark. 259; 71 *Id.* 518; 19 A. & E. Enc. Law, (2 ed.) 685; 100 Ark. 318; 142 U. S. 16; 152 N. W. 42; 90 Pac. 637.

3. The second clause of the 5th instruction should not have been given. This was a charge upon the facts. 100 Ark. 318. Besides the evidence disclosed probable cause.

3. The court erred in the concluding paragraph of the 6th instruction. There was no evidence to warrant it and the 13th is open to the same objection. There was also error in refusing Bumgardner's second request and in amending it and giving it as amended. Also in refusing his 3d request, also in refusing his 5th and 8th requests. It is error to refuse specific instructions when not covered by others given. 69 Ark. 134; 98 *Id.* 17.

5. The verdict should have been set aside because in finding more actual damages against Bumgardner than Price it appears the jury did not properly comprehend the facts and law, or were moved by some improper motive, such as prejudice or passion. 1 Sumner 481; Fed. cases No. 17, 671; 4 Fed. cases No. 2284; 4 *Id.* 128. The verdict is not sustained by the evidence and is contrary to law. Freeman on Judgments, § 241; 86 Atl. 555. In case of suit against several to recover for joint tort or trespass the verdict, if against all or more than one must be against the defendants found guilty for *one sum,* viz. the damages suffered. 48 Conn. 520; 86 Atl. 555; 42 Conn. 270; 93 Atl. 531; 62 S. E. 580; 98 Pac. 878; 105 S. W. 867; 134 *Id.* 116; 172 U. S. 554; 4 Mass. 419; 54 Cal. 491; 45 S. W. 682; 146 N. W. 830; 83 Ind. 489; 13 N. J. L. 294; 5 Burr. 2790; 7 Ill. App. (7 Bradwell) 644.

*Ira D. Oglesby* and *Ira D. Oglesby, Jr.,* for appellee.

1. There was no error in admitting Rowe's testimony. The objection is not well taken because not directed to any specific part, but to the entire deposition. Statements made before of a conspiracy are admissible. Admissions after prosecution are also admissible. 72

Ark. 316; 53 Atl. 800; 61 N. W. 390. When hostility is shown at a specific time, the existence at another time is generally admissible. Wigmore on Ev. § 396; 29 Cyc. 99 and cases cited.

2. The verdict is abundantly sustained by the evidence and no error of law was committed.

3. There is no error in the part of the 5th instruction as to malice and probable cause. It is essentially different from the one condemned in 100 Ark. 316.

4. Nor is there error in the 6th instruction as to the advice of counsel; nor the 2nd; nor in refusing those asked, reviewing them and cite 107 Ark. 190; 94 Fed. 343; 61 N. W. 390; 44 Fed. 896; 5 Rul. Case Law, 1088.

5. The jury had the right to apportion the damages. 1 Bay 11; 39 Am. Dec. 122; 159 S. W. 792; 178 *Id.* 1043; Central Law Journal, Oct. 15, 1915, p. 282 and Nov. 5, 1915, p. 327; 26 Mass. 555; 11 N. Y. 128; 13 Ark. 225; 9 Pick. 555; 4 Bibb 208; 3 Atl. 645; 63 *Id.* 60.

HART, J. (after stating the facts.) (1) As we have already stated, there was not only testimony from which the jury might have inferred legal malice but even express malice. Want of probable cause and malice, combined, are essential in order to maintain a suit for malicious prosecution. If either of these is wanting the action must fail.

(2-3) Malice generally may be inferred from the evidence of want of probable cause; but the converse of the proposition can not be sustained. Absence of probable cause is absolutely essential to sustain an action for malicious prosecution. No matter how much or what kind of malice may actuate the prosecutor, if he has probable cause to believe the defendant guilty, he is justified in taking the matter before the court. Mod. Am. Law, Vol. II, p. 297; *Wheeler* v. *Nesbitt,* 24 How. (U. S.) 544; *Thompson* v. *Beacon Valley Rubber Co.,* 56 Conn. 493; *Hamilton* v. *Smith,* 39 Mich. 222.

In the case last cited the court said: "Malice may be proved by direct evidence or it may be inferred from

circumstances; and, generally, it may be inferred from the want of probable cause, though the latter can never be presumed or inferred from the most express malice."

In the first mentioned case the Supreme Court of the United States, in discussing the question, said:

"Malice, alone, however, is not sufficient to sustain the action, because a person actuated by the plainest malice may, nevertheless, prefer a well founded accusation, and have a justifiable reason for the prosecution of the charge. Want of reasonable and probable cause is as much an element in the action for a malicious criminal prosecution as the evil motive which prompted the prosecutor to make the accusation, and though the averment is a negative one in its form and character, it is, nevertheless, a material element of the action, and must be proved by the plaintiff by some affirmative evidence, unless the defendant dispenses with such proof by pleading singly the truth of the several facts involved in the charge. *Morris* v. *Corson,* 7 Cow. 281. Either of these allegations may be proved by circumstances, and it is unquestionably true that want of probable cause is evidence of malice, but it is not the same thing; and unless it is shown that both concurred in the prosecution, or that the one was combined with the other in making or instigating the charge, the plaintiff is not entitled to recover in an action of this description. Accordingly it was held in *Foshay* v. *Ferguson,* 4 Den. 619, that even proof of express malice was not enough without showing, also, the want of probable cause; and the court go on to say, that however innocent the plaintiff may have been of the crime laid to his charge, it is enough for the defendant to show that he had reasonable grounds for believing him guilty at the time the charge was made. Similar views were also expressed in *Stone* v. *Crocker,* 24 Pick. 83. There are two things, say the court in that case, which are not indispensable to the support of the action, but lie at the foundation of it. The plaintiff must show that the defendant acted from malicious motives in prosecuting him, and that he had no sufficient reason

to believe him to be guilty. If either of these be wanting, the action must fail; and so are all the authorities from a very early period to the present time. *Golding* v. *Crowle,* Sayer 1; *Farmer* v. *Darling,* 4 Burr. 1, 974; 1 Hilliard on Torts, 460.

"It is true, as before remarked, that want of probable cause is evidence of malice for the consideration of the jury; but the converse of the proposition cannot be sustained. Nothing will meet the exigencies of the case, so far as respects the allegation that probable cause was wanting, except proof of the fact; and the *onus probandi,* as well remarked in the case last referred to, is upon the plaintiff to prove affirmatively by circumstances or otherwise, as he may be able, that the defendant had no reasonable ground for commencing the prosecution. *Purcell* v. *McNamara,* 9 East 361; *Williams* v. *Taylor,* 6 Bing. 184; *Johnstone* v. *Sutton,* 1 Term. 544; *Turner* v *Ambler,* 10 Q. B. 257."

(4) We have held that proof that defendant acted upon the advice of counsel learned in the law or upon the advice of the public prosecutor given after a full and fair statement of all the known facts, will be a complete defense to an action for malicious prosecution, because it is conclusive evidence of the existence of probable cause. *Laster* v. *Bragg,* 107 Ark. 74, and cases cited; *St. L., I. M. & S. Ry. Co.* v. *Wallin,* 71 Ark. 422.

It is not necessary to determine whether the facts stated in the affidavits of Medlin and Kennedy constitute a crime under the postal laws of the United States, or whether the opinion expressed by the district attorney was erroneous; for the advice of counsel, honestly given after a full disclosure of the facts, is a complete defense. *Kansas and Texas Coal Co.* v. *Galloway,* 71 Ark. 351, and authorities cited above.

It is earnestly insisted by counsel for the defendants that the statements to the attorneys were truthful, full and complete, giving all the material facts and circumstances within the knowledge or information of defendants; and that the existence of probable cause became a

question of law for the court which should not have been submitted to the jury. They contend, therefore, that the court erred in not directing a verdict for them. In this contention we think they are correct. As we have already seen probable cause is a complete defense to the action.

(5)   The district attorney stated that he advised the institution of the prosecution against Morris upon the facts contained in the affidavit of Medlin and Kennedy. It was proved that the facts contained in these affidavits were true. The district attorney testified that he believed at the time that the appellant was guilty under the facts stated to him and that he still held to that opinion. There is nothing whatever in the record to impeach or contradict him in this respect. The undisputed evidence showed that he acted upon the information given him by the facts contained in the affidavits above referred to, and that he acted in good faith in instigating the prosecution, believing the facts stated to him constituted a violation of the postal laws. As we have already seen, in an action for a malicious prosecution if probable cause is found to exist, no amount of malice will entitle a plaintiff to a verdict. The undisputed evidence shows that the defendants laid before the district attorney all the material facts in their possession and that the prosecution was instituted upon the district attorney's advice, given in good faith. Under our decisions, this is conclusive evidence of the existence of probable cause and is a complete defense to an action for malicious prosecution.

The record shows that the case has been fully developed and no useful purpose could be served by remanding the cause for a new trial. Therefore, for the error in not directing a verdict for the defendants, the judgment must be reversed and the cause of action dismissed.