**R. T. ROGERS, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, Defendant.**

No. F-72-C-6.

United States District Court, W. D. Arkansas, Fayetteville Division.

April 25, 1972.

John Lineberger, of Wommack & Lineberger, Fayetteville, Ark., for plaintiff.

William Stocks, Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge, sitting by designation.

The plaintiff, a citizen of Arkansas and resident of the Western District, filed his complaint herein on January 28, 1972, seeking judgment in excess of $10,000, exclusive of interest and costs, for damages alleged to have been sustained by him growing out of litigation in the Circuit Court of Benton County, Arkansas.

On February 23, 1972, the defendant, a corporation organized under the laws of New York with its principal office in New York, filed its answer to the complaint denying all allegations therein.

Jurisdiction is based upon diversity of citizenship and the amount in controversy. The substantive law of Arkansas applies.

On March 28, 1972, defendant filed its motion for summary judgment in accordance with Rule 56, Fed.R.Civ.P., in which it alleged that the pleadings, depositions, answers to interrogatories, admissions, together with affidavits, show that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law.

On April 14, 1972, plaintiff filed his response to the motion of defendant and alleged that an examination of the record demonstrates that there are genuine issues of material fact and that the defendant is not entitled to judgment as a matter of law. The parties have served and submitted elaborate briefs in support of their respective contentions.

The court has thoroughly examined the entire record, the evidence, the contentions of the parties, and the briefs submitted in support thereof, and is convinced that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law.

Although findings are not necessary on the motion for summary judgment, 6 Moore's Federal Practice, 2d Ed., § 56.02[11], p. 2046, the parties are entitled to know the reasons upon which the judgment of the court are based. The reasons are apparent to anyone when the applicable law is applied to the incontrovertible facts.

On his brief the plaintiff contends that there are genuine issues of material fact with respect to the following:

"(1) Whether General Electric had probable cause to sue Mr. Rogers and to continue to prosecute the suit after it became evident that the suit had no merit.

(2) Whether General Electric maliciously prosecuted the action against Mr. Rogers.

(3) Whether General Electric communicated any facts pertaining to Mr. Rogers to its attorney, and if so what those facts were.

(4) Whether General Electric Company used reasonable diligence to ascertain the truth.

(5) Whether General Electric relied in good faith upon the advice it received from counsel.

(6) Whether the Benton County suit against Mr. Rogers was terminated by Order of the Court."

The following facts are uncontroverted.

On August 13, 1970, the defendant, General Electric Company (General Electric), commenced its action in the Circuit Court of Benton County, Arkansas, against Hiwasse Homes, Inc., (Hiwasse), seeking to recover the sum of $19,178.08, the amount claimed to be due for merchandise sold and delivered to Hiwasse. Prior to the commencement of the action, General Electric contacted Mr. William M. Stocks, a duly qualified and licensed attorney of Fort Smith, Arkansas. In the letter to Mr. Stocks was a statement of the account and two checks that it had received from Hiwasse upon which payment had been refused because of insufficient funds. General Electric requested and instructed Mr. Stocks as follows:

"Please make collection of the account in our behalf. We will leave the manner to your discretion. If we have any

right of replevin or seizure available under the prevailing law in the State of Arkansas, please exercise in our behalf."

A writ of attachment was issued upon the complaint, and on the same date Mr. Stocks conferred with the attorney for Hiwasse, Mr. Ralph Williams of Bentonville, Arkansas, and accompanied by a Deputy Sheriff of Benton County, Arkansas, went to Gravette, the place of business and office of Hiwasse, to ascertain what property owned by Hiwasse was subject to attachment. There Mr. Stocks conferred with the plaintiff in the instant suit, R. T. Rogers, who was President and Managing Officer of Hiwasse. In that conference the various assets of Hiwasse were discussed, and Mr. Rogers stated that Hiwasse would assign certain property and accounts free of liens and execute a promissory note and security agreement to secure the payment of the promissory note if the writ of attachment was not served. As a result of the representations of Mr. Rogers concerning the value of the property to be included in the security agreement, Mr. Stocks, on the next day, August 14, 1970, obtained the permission of his client, General Electric, to release the writ of attachment. A note in the principal sum of $21,318.80, payable on or before 45 days from the date thereof, with interest at 6 percent per annum, was executed and secured by the security agreement on August 14, 1970.

Subsequent to the acceptance of the note and security agreement, the attorney for General Electric collected on the securities, other than the double wide mobile home, certain money, and on November 12, 1970, remitted the same to General Electric, leaving due, after crediting such collection, the sum of $14,-683.76 on the note and $2,731.37 on open account, together with interest and attorney's fees. In the letter of transmittal, Mr. Stocks advised General Electric that he intended to press for further collection in connection with the double wide mobile trailer used as a home office, as well as other possible areas of collection.

Hiwasse defaulted in the payment of the note. Some of the directors of Hiwasse expressed doubts as to their authority to grant a lien on the double wide mobile home. On February 11, 1971, three months after default on the promissory note, General Electric filed an amended and substituted complaint in the Benton County Circuit Court, and the original suit on the account was dismissed without prejudice. United Housing of Arkansas, Inc., a subsequent assignee of Hiwasse, and the plaintiff in the instant case, R. T. Rogers, were made parties defendant to the amended and substituted complaint, in which plaintiff prayed for judgment for the sum due on the promissory note and for the sale of the property described in the security agreement.

In paragraph 8 of the amended and substituted complaint, General Electric alleged in the alternative that if the defendant Hiwasse Homes, Inc., had no right to grant to the plaintiff a first security interest in the double wide mobile home unit presently utilized as the company office at Gravette, Ark., the plaintiff was entitled to a personal judgment against the defendant, R. T. Rogers, for the following reasons:

"The defendant, R. T. Rogers, represented to plaintiff and its attorney at law that the defendant, Hiwasse Homes, Inc., was the owner of the said double wide trailer and that the said trailer was unencumbered and free of any and all claims and liens of other parties or persons; and in reliance upon said representations by the defendant, R. T. Rogers, the plaintiff accepted the promissory note and security agreement hereinabove described and took the necessary action to cause the writ of attachment to be stayed, and in the event the said representation was false, said Hiwasse Homes, Inc., did not have good title, free and clear of all liens and encumbrances, then the said plaintiff has

been damaged in the amount of the value of said double wide mobile home trailer and should have judgment over and against the said R. T. Rogers in the full amount plus its costs, interest, and all other proper relief."

On August 20, 1971, Hiwasse filed its answer in which it admitted the execution of the note and security agreement, but denied "each and every other material allegation contained in the complaint, and that said complaint should be dismissed with prejudice and the defendant allowed to recover its costs herein expended."

R. T. Rogers filed a demurrer to the amended and substituted complaint on the ground that it did not state a cause of action against him.

General Electric filed a response to the demurrer, in which it alleged:

"Paragraph 8 of the amended complaint filed in this cause states in the alternative a cause of action against R. T. (Tony) Rogers for common law fraud, both actual fraud and legal or constructive fraud."

The demurrer was overruled, and on August 31, 1971, Rogers filed his answer to the amended complaint, in which he stated:

"That this defendant generally and specifically denies each and every material allegation set forth in said amended complaint."

On August 31 Mr. Lineberger, the attorney for Rogers, wrote Judge Enfield, State Circuit Judge, that he had not received a copy of the promissory note, financing statement, and security agreement executed by Hiwasse, and that he was advising Mr. Stocks that if he would furnish copies of the documents, that he might be in a position to amend the answer and narrow the issues involved. A copy of the documents was immediately furnished by Mr. Stocks, and Mr. Lineberger, as attorney for Rogers, on September 10, 1971, filed an amended answer in which he admitted that Exhibits A and B attached to the amended complaint were true and correct copies of the prom-

issory note, financing statement and security agreement duly executed by defendant Hiwasse, and further admitted that the security agreement and financing statement were filed in the Office of the Circuit Clerk of Benton County and in the Office of the Secretary of the State of Arkansas, and that it appeared to him to be "a perfected and first lien on the property therein described."

On September 16, 1971, Mr. Stocks requested the Circuit Judge to set the case for trial on a day certain in order that he might have an opportunity to arrange for the attendance of the witnesses from Memphis, Tenn., to testify in the case. On September 20, 1971, Judge Enfield notified all counsel that the case was set for pretrial on October 12, 1971. At the pretrial the Judge suggested that the issues be narrowed to those which at that time were in actual dispute, and no one disputed the validity of the promissory note or the fact that it was past due and unpaid. The attorney for Mr. Rogers requested the court dismiss him as a party to the action. Mr. Stocks agreed to a dismissal of the amended and substituted complaint against Rogers only if a decree or judgment was entered granting judgment to General Electric for the full amount sued on and finding that it had a first lien on the collateral which was the subject of the security agreement. At that time counsel for Hiwasse was not in a position to admit or stipulate to the prior lien status of General Electric's security agreement on the double wide mobile home or to stipulate as to the amount of the indebtedness.

On October 20, 1971, Mr. Williams, the attorney for Hiwasse, wrote Judge Enfield that:

" * * * it is apparent that Hiwasse Homes has no defense regarding the amount of the indebtedness owed plaintiff. Hiwasse Homes will therefore not resist judgment being entered against it for the amount of the indebtedness sued on. Plaintiff can then proceed to pursue whatever lien rights it might have."

The court then entered an order on October 21, 1971, in which it found that none of the parties questioned the validity of the note and the fact that it was past due and unpaid, and none of the defendants questioned the rights of General Electric to proceed as a secured party against the security named in the security agreement. In the same order the court granted Hiwasse ten days in which to answer certain interrogatories and in which to determine whether it desired to contest the priority of the lien asserted by General Electric. The order of the court further provided that plaintiff should submit precedent for judgment against the defendant Hiwasse and dismissal as to defendants United Housing of Arkansas, Inc., and R. T. Rogers. "Said precedent shall provide that plaintiff has a first and prior lien on the aforesaid mobile home and if the judgment be not paid within ten days, plaintiff may proceed to sell said security and apply the proceeds on the judgment. The precedent should be submitted to all attorneys in the case for approval before submitting it to the court for entry." On November 2, 1971, the precedent for judgment, duly approved by all attorneys, was submitted and entered.

■ In general, to sustain an action for malicious prosecution the plaintiff must establish the following elements: (1) the institution or continuation of original judicial proceedings, either civil or criminal; (2) by, or at the instance of the defendant; (3) the termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; and (6) the suffering of injury or damage as a result of the action or prosecution complained of.

The defendant employed Mr. Stocks to take whatever action was necessary and legal to collect the indebtedness due it from Hiwasse. Everything that was done by the attorney for General Electric was done in good faith in an effort to collect an indebtedness that was admittedly due General Electric by Hiwasse. At that time Hiwasse had many other creditors, and it was necessary that the attorney for plaintiff investigate the nature and extent of the indebtedness owed by Hiwasse. The writ of attachment that was issued was for the purpose of sequestering and obtaining a sufficient amount of the unencumbered assets to satisfy the indebtedness due General Electric. Naturally, Mr. Rogers, as President of Hiwasse, and Mr. Williams, its attorney, desired to avoid the service of the writ of attachment. In accordance with the statements of Mr. Rogers, concurred in by Mr. Williams, the note upon which the amended and substituted complaint was based was executed together with the security agreement. Mr. Stocks accepted and relied upon the representations of defendant Rogers, and the writ of attachment was withdrawn. Three months after the promissory note was due and unpaid, the amended and substituted complaint was filed, in which the plaintiff, in the alternative, asked for judgment against Rogers if it developed that Hiwasse was unable to grant a first lien on the double wide mobile home.

In his effort to sustain his contention that there are genuine issues of material fact, the plaintiff makes six contentions. Contentions (3), (4), and (5) may well be considered together. In contention (3) plaintiff asks whether General Electric communicated any facts relative to Mr. Rogers to its attorney and, if so, what the facts were; in contention (4) he asks whether General Electric used reasonable diligence to ascertain the truth, and in contention (5) whether General Electric relied in good faith upon the advice it received from counsel.

■ It is not controverted that General Electric simply contacted Mr. Stocks and asked him to proceed to collect the undisputed indebtedness that Hiwasse owed it. It suggested that every legal action be taken since the last two checks that Rogers, as General Manager of Hiwasse, had sent it had been dishonored. General Electric relied upon the attorney to take such steps as were necessary to

collect the indebtedness. The record is devoid of any action on the part of General Electric or its attorney which tends to show bad faith. The only thing that the attorney was trying to do was to carry out the wishes of his client to collect an honest and overdue debt. Under the undisputed facts, the action of Mr. Stocks in filing the amended and substituted complaint is a complete defense to the complaint of plaintiff herein.

In Jennings Motors v. Burchfield, (1931) 182 Ark. 1047, at page 1049, 34 S.W.2d 455, at page 455, the court said:

"It is a complete defense to an action for malicious prosecution if the defendant in the action instituted the prosecution, upon the advice of a prosecutor or counsel learned in the law after truly laying all the facts in his possession before him, or them. Randleman v. Johnson, 125 Ark. 54, 187 S.W. 626; Hall v. Adams, 128 Ark. [116] 119, 193 S.W. 520. The reason of this rule is that when one truly lays all the facts in his possession before a prosecutor or an attorney and follows his or their advice, the law conclusively presumes the existence of probable cause, the lack of which is a necessary element in a suit for malicious prosecution. St. Louis I. M. & S. Ry. Co. v. Wallin, 71 Ark. 422, 75 S.W. 477; L. B. Price Mercantile Co. v. Cuilla, 100 Ark. 316, 141 S.W. 194; Price v. Morris, 122 Ark. 382, 183 S.W. 180."

Contention (1) is stated as "whether General Electric had probable cause to sue Mr. Rogers and to continue to prosecute the suit after it became evident that the suit had no merit," and contention (2) asks whether General Electric maliciously prosecuted the action against Mr. Rogers. These two contentions may well be considered together.

In Malvern Brick & Tile Co. v. Hill, 232 Ark. 1000, at page 1002, 342 S.W.2d 305, at page 307 (1961), the court said:

" * * * In an action for malicious prosecution the burden is on the plaintiff to establish that the defendant acted maliciously and without probable cause, in prosecuting the plaintiff. In short, malice and want of probable cause are essential elements in an action for malicious prosecution. Foster v. Pitts, 63 Ark. 387, 38 S.W. 1114; Kable v. Carey, 135 Ark. 137, 204 S.W. 748, 12 A.L.R. 1227; Keebey v. Stifft, 145 Ark. 8, 224 S.W. 396; Wm. R. Moore, D. G. Co. v. Mann, 171 Ark. 350, 284 S.W. 42; Gazzola v. New, 191 Ark. 724, 87 S.W.2d 68."

The relationship of the requisite of malice in instituting the proceedings to that of want of probable cause is stated in the case of Kable v. Carey, 135 Ark. 137, at page 142, 204 S.W. 748 at page 750 (1918), where the court said:

"To justify an action for malicious prosecution, both want of probable cause and malice must be shown. Where there is want of probable cause, the jury may infer malice, but they cannot properly do so if all the facts disclosed lead to a different conclusion. If the law imputed malice from want of probable cause alone, then there would be no distinct requirement of malice, but want of probable cause would be the sole element necessary."

Since the two prime requisites to the maintenance of a suit for malicious prosecution are want of probable cause and malice, consideration should be given to what is probable cause.

In Glenn v. Hoerner Boxes, Inc. (W.D. Ark.1962) 211 F.Supp. 9, this court considered all of the decisions of the Supreme Court of Arkansas in which that court had discussed the necessity of probable cause and malice to sustain the prosecution of a suit for malicious prosecution.

On March 7, 1962, Hoerner commenced a suit in the Sebastian Chancery Court, Fort Smith District, to obtain an injunction against the International Brotherhood of Pulp, Sulphite & Paper Mill

Workers Union, and certain members of the Union. The next day, March 8, the court granted injunctory relief against certain individual members of the Union and as representatives of the Union. On April 12 Hoerner filed an application for contempt citation against all four of the individual defendants, and alleged that they had flagrantly and repeatedly violated the order and decree of the court entered on March 8, 1962, and that said parties should be punished for contempt of the orders and decree of the court, and in addition should be directed to pay certain damages which Hoerner alleged it had sustained by reason of the unlawful actions of the defendants. A hearing was held on the application of Hoerner for contempt citation, and on September 11, 1962, the court entered a decree in which it found and decreed that the defendants in that action were not guilty of contempt, and they were acquitted and discharged.

On September 12, 1962, the individuals who had been discharged and acquitted commenced an action in this court against Hoerner for malicious prosecution to recover damages alleged to have been sustained by them by the action of Hoerner in filing the application for contempt citation.

On September 24, 1962, Hoerner filed a motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. On October 4 Hoerner filed an amendment to its motion in which it set forth all of the proceedings that had been had in the Chancery Court.

On September 25, 1962, this court by letter suggested to the parties that since the original motion and the amendment thereto of Hoerner were based upon matters outside the allegations of the complaint, that said motions could best be treated as one for summary judgment and disposed of as provided in Rule 56, Fed.R.Civ.P. In accordance with that suggestion the parties proceeded to submit briefs and arguments, and the court, after a full consideration of the issues and the record before it, sustained the motion and the amendment thereto of Hoerner and dismissed the complaint of the plaintiffs.

The Supreme Court of Arkansas has not deviated in the least respect from the decisions cited and quoted from by this court in Glenn, and it seems unnecessary to again cite or discuss those decisions. A mere casual reading of them and the conclusions reached, when applied to the facts in the instant case, is convincing that the plaintiff has not established want of probable cause and malice on the part of General Electric in the prosecution of its suit to collect an honest debt that was admittedly due by Hiwasse.

In the 6th and last contention made by plaintiff, he in effect asks whether the Benton County suit against him was terminated by order of the court. The facts reflected by the record of the Benton County Circuit Court, and heretofore set forth, answers that question. It should not be necessary to repeat what has heretofore been set forth as uncontroverted facts other than to merely state that following the filing of the answer by Rogers, in which he "generally · and specifically denies each and every allegation set forth in the amended complaint," the attorney for General Electric requested the court to set the case for trial. Evidently the court thought the case could be disposed of by a pretrial conference, and fixed October 12, 1971, as the date for a pretrial conference. In the meantime, the attorney for Mr. Rogers had made a further investigation, and on September 10, 1971, filed an amended answer, heretofore referred to, in which Rogers admitted that the debt was honest, that it was due, and that the lien claimed by General Electric "appeared to him to be a perfected and first lien on the property therein described."

The case would have been disposed of October 12, but it developed that the attorney for Hiwasse desired to further confer with the Board of Directors of

Hiwasse. Thereupon the Circuit Judge gave him ten days in which to make such inquiry, and Mr. Williams, the attorney for Hiwasse, after making an investigation, reported to the court that they had no defense and that the claim of General Electric was prior and paramount to the claims of other creditors of Hiwasse. Upon receiving the report, the court, on November 2, 1971, entered the final judgment in accordance with the provisions of its pretrial order.

The alternative claim of General Electric against Rogers was terminated by order of the court based upon the admissions of Rogers in his amended answer to the amended and substituted complaint of General Electric.

There is no genuine issue as to any material fact. There isn't even any dispute about the immaterial facts.

If this case were to be tried to a jury, there isn't any doubt but that the court at the conclusion of the testimony would be required to instruct a verdict for the defendant. Marion County Co-op. Ass'n v. Carnation Co., (W.D.Ark.1953) 114 F.Supp. 58, aff'd 8 Cir., 214 F.2d 557 (1954); Sartor v. Arkansas Natural Gas Corp., (1944) 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967. In Chambers v. United States, (8 Cir. 1966) 357 F.2d 224, at page 227, the court said:

"We have consistently held that summary judgment is appropriate where, had the case gone to trial, a directed verdict would have been required. Wolf v. Schaben, 272 F.2d 737 (8th Cir. 1959); Rubenstein v. Dr. Pepper Co., 228 F.2d 528, 532–533 (8th Cir. 1955); Durasteel v. Great Lakes Steel Corp., 205 F.2d 438, 441 (8th Cir. 1953)."

See, also, Kern v. Tri-State Ins. Co., (8 Cir. 1968) 386 F.2d 754, 756.

Therefore, in accordance with the above judgment is being entered today sustaining the motion of General Electric Company for summary judgment, together with its costs, and dismissing the complaint of the plaintiff, R. T. Rogers.